IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02742-RBJ

MATTHEW GIBLIN,

    Plaintiff,

v.

JOHN SLIEMERS and PATRICIA SLIEMERS,

    Defendants.

## ORDER

This matter is before the Court on defendants' motion for summary judgment [ECF No. 40]. For the reasons described below, the motion is granted, and judgment will enter in favor of the defendants.

**FACTS**

The following facts are undisputed except where otherwise noted. John Sliemers and Patricia Sliemers, husband and wife, own six rental cabins in Golden, Colorado. ECF No. 40 at ¶¶ 2–3. Mr. and Mrs. Sliemers have rented them out for over 30 years. *Id.* at ¶ 3; ECF No. 3 at ¶ 2. In late-August 2012, Matthew Giblin rented one of the cabins. ECF No. 43 at ¶ 1. He shared the cabin with his friend John Mahon. ECF No. 40 at ¶ 4.

On June 22, 2009, Mr. Sliemers installed a new water heater in the cabin's basement. ECF No. 40 at ¶¶ 7, 9. A black iron pipe connected the propane tank to the building. *Id.* Mr. Sliemers did not obtain a permit from Jefferson County (in which Golden is found) before

1

installing the water heater. ECF No. 43 at ¶ 3. When an individual obtains a plumbing permit, the Jefferson County Plumbing Inspector examines the work. *Id.* at ¶ 11; ECF No. 43-2 at 8. No one inspected Mr. Sliemers' installation of the new water heater. ECF No. 43 at ¶ 3. Although he claims to have installed over 20 water heaters in his cabins, Mr. Sliemers is not a licensed plumber, nor is he an "authorized installer of a propane gas water heater." ECF No. 40 at ¶ 8*;* ECF No. 43 at ¶ 3. Mr. Sliemers alleges that he checked the propane piping system for leaks at the time of installation and did not find any. ECF No. 43 at 6.

At the beginning of the rental term in August 2012, Mr. and Mrs. Sliemers instructed Mr. Giblin and Mr. Mahon to contact them if there was a problem with the cabin. ECF No. 40 at ¶ 5. Shortly after they moved in, the pilot light on the kitchen stove went out. *Id.* at ¶ 12. Mrs. Sliemers responded to the tenants' request by visiting the cabin to relight the pilot light. *Id.* Mr. Giblin alleges that Mrs. Sliemers showed him how to relight the stove's pilot light should it go out again. ECF No. 43 at 7.

On September 12 or 13, 2012, Mr. Giblin did not have any hot water for his shower. ECF No. 40 at ¶ 13. He did not inform the Sliemerses because he believed it was an issue he could fix. *Id.* at ¶ 18. On September 13, Mr. Giblin went to the basement, read the instructions on the water heater, and initiated "the process of relighting the pilot light by turning the gas knob to the 'off' position and turning the temperature control knob to the 'pilot' position." *Id.* at ¶ 13. As a safety measure, state law requires propane to contain an odorant so that it can be detected by smell. *Id.* at ¶ 14. While he was in the basement, Mr. Giblin did not notice any odor of propane. *Id.*

Mr. and Mrs. Sliemers allege that the instructions posted on the water heater said to wait ten minutes after turning off the gas before trying to relight the pilot light. *Id.* at ¶ 19. However, Mr. Giblin took no further action that day. ECF No. 43 at 8. The following morning, he returned to the basement and again did not smell any propane. ECF No. 40 at ¶ 20. He adjusted the gas knob from "off" to "pilot." *Id.* When Mr. Giblin pushed the igniter, an explosion and fire occurred. *Id.* at ¶ 21. Mr. Giblin suffered second- and third-degree burns. ECF No. 43 at ¶ 7.

Three days after the explosion, Mr. Sliemers started repairing the cabin. ECF No. 40 at ¶ 28. He removed the water heater and the pipes and fittings from the basement. *Id.* He disposed of the materials at Sims Metal Management in Denver on September 21, 2012. *Id.* The Sliemerses state that the Jefferson County Sheriff Office did not recommend that they retain the water heater and pipes. *Id.* at ¶ 26. They further explain that the fire department had employed building jacks to stabilize the cabin after the explosion. *Id.* at ¶ 27. The department requested that the Sliemerses return the jacks, which prompted them to "start repairing the [cabin] within a couple of days following the explosion." *Id.* Finally, the Sliemerses attest that financial realities drove them to repair the cabin as soon as possible, as it was an important source of rental income. *Id.*

## DISCUSSION

**I. Standard of Review.**

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the nonmoving party. *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## II.     **Premises Liability Claim Against Mr. and Mrs. Sliemers.**

The Colorado Premises Liability Act, C.R.S. 13-21-115, governs a landowner's duties to individuals that occupy the land. *Vigil v. Franklin,* 103 P.3d 322, 326 (Colo. 2004). The statute applies to "any civil action against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property." § 13-21-115(2). Before its enactment, an individual could file a common law negligence claim to seek redress for an injury suffered on another's land. The Colorado Premises Liability Act abrogated common law claims and defenses in premises liability and is now the exclusive remedy for landowner liability. *Vigil,* 103 P.3d at 328 (finding that the General Assembly intended "to completely occupy the field and supersede existing law in the area.").

Under the Colorado Premises Liability Act, a landowner's specific duties depend on the plaintiff's status as a trespasser, a licensee, or an invitee. *Bach v. Hyatt Corp.,* 2009 WL 347478,

at *2 (D. Colo. 2009). It is undisputed here that the Sliemerses are "landowners," and that Mr. Giblin is an "invitee." ECF No. 43 at 1. The statute provides that an invitee may recover by establishing that (1) the landowner "actually knew or should have known" of a danger on the premises and (2) the landowner's action or inaction constituted an "unreasonable failure to exercise reasonable care" to protect the plaintiff from that danger. *Lombard v. Colorado Outdoor Educ. Center, Inc.,* 187 P.3d 565, 567 (Colo. 2008) (construing § 13–21–115(3)(c)(I)).

There is no evidence that Mr. or Mrs. Sliemers actually knew of a danger on the premises. But constructive knowledge can satisfy the knowledge first requirement element, i.e., that the landowner "knew or should have known" of the danger. *Id.* at 568. Under Colorado law, "constructive knowledge" is defined as "knowledge that one exercising reasonable diligence should have." *Clemmons v. FC Stapleton II, LLC,* 485 F.Appx. 904, 908 (10th Cir. 2012) (unpublished). The *Lombard* Court reasoned that "as a matter of public policy and public safety, it is entirely appropriate that the law impute certain knowledge to prevent individuals from denying knowledge or acting in a way so as to remain ignorant." 187 P.3d at 571–72.

As for the second element, a plaintiff "may overcome summary judgment on the issue of the landowner's 'unreasonable failure to exercise reasonable care' by demonstrating that the landowner violated a statute or ordinance that was intended to protect the plaintiff from the type of injury" suffered. *Id.* at 568.

### A. The Danger in the Cabin.

Before analyzing whether the Sliemerses had constructive knowledge of the hazard on their property, the Court must first determine what the relevant "danger" is. Mr. Giblin argues that the "unsafe condition was the installation of the propane water heater by an unqualified

5

individual who did not utilize the instruction manual or follow the requirements of the Jefferson County Building Department." ECF No. 43 at 14. He adds that "the very element which caused the harm, the use of the water heater, was not permitted, not inspected." *Id.* at 12. He states that (1) Mr. Sliemers installed the water heater without a permit and without the help of a qualified professional; (2) Jefferson County never inspected the installation; (3) Mr. Sliemers did not properly vent the water heater; (4) Mr. Sliemers did not install a propane gas detector; (5) Mr. Sliemers did not follow the manual's instructions for installing a water heater; (6) the Sliemerses did not provide their tenants with information about propane safety; and (7) the Sliemerses failed to advise Mr. Giblin that they did not get a permit for the water heater or that they had not installed a gas detector. *Id.* at ¶¶ 9, 13, 17.

However, none of this identifies the danger. Rather, his argument reflects his view of how the Sliemerses failed to exercise reasonable care when installing the water heater. *Cf. McIntire v. Trammell Crow, Inc.,* 172 P.3d 977, 980 (Colo. App. 2007) (although the danger must arise from the condition of the property or activities conducted or circumstances existing on the property, "it is not knowledge of the condition, activities or circumstances that gives rise to liability; it is the danger of which the owner actually knew or should have known").

The Jefferson County Sheriff Office and Mr. Giblin's own expert, Mr. John Freeman, did identify a danger. Investigator Donald Roach from the Sheriff Office conducted a same-day investigation, and he concluded that the incident was "an accidental propane gas explosion" that occurred because of "the ignition of propane gas in the atmosphere" when Mr. Giblin pushed the igniter on the water heater. ECF No. 40 at ¶ 26. Similarly, Mr. Freeman, an engineer hired to investigate the cause of the explosion, determined that the incident was "most likely the result of

the ignition of a rich mixture of propane gas in the basement." ECF No. 43-1 at 8, ¶ 1. Mr. Freeman finds that the "propane gas came from a substantial leak in the propane piping system in the basement." *Id.* at ¶ 5.

It might be useful here to describe how a propane-fired water heater functions. A pipe connects a water heater to an external gas supply. ECF No. 43-4 at 5. A burner sits under the water tank, and a control valve and a thermostat knob regulate the amount of gas that reaches the burner. *Id*. A pilot light produces the small amount of flame necessary to light the gas at the burner. When ignited, the burner heats the water in the tank. The burning of the propane produces carbon monoxide. *Id.* at 13. In order to exhaust these gases, a draft hood on the top of a water heater connects to a vent pipe that runs to the exterior of the building. ECF No. 43-1 at 5.

At the time of the explosion, the propane supply for the Sliemerses' cabin entered the basement via a three-quarter-inch pipe. *Id.* at 6. This pipe split in a "tee," with one branch providing gas to the furnace and one delivering gas to the water heater. *Id.* Another branch ran up through the floor "presumably to the gas [stove] in the kitchen." *Id.* Water heaters usually have a "drip leg," which Mr. Sliemers refers to as a "drop," to catch any sediment or moisture before the gas enters the tank. Sliemers Depo. ECF No. 43-3 at 96:24–97:8. Mr. Sliemers installed a drip leg in 2009. *Id.*

Mr. Giblin allegedly turned the gas control valve to "pilot" and the thermostat knob to "pilot lighting." Such settings likely would have prevented significant quantities of gas from reaching the burner. ECF No 43-1 at 8; Longseth Depo. ECF No. 43-9 at 31:21–32:1. When in the pilot position, the control valve only permits gas to flow to the pilot if it "has already been lit

7

or if the knob is held in the down position to light the pilot." ECF No. 43-1 at 7. The thermostat control sets the temperature for the water, and if it is turned to the pilot position, no signal is conveyed to heat up the water, so no significant amount of gas enters the tank. Longseth Depo. ECF No. 43-9 at 32:2–10. From these facts, Mr. Freeman determines that "any propane leak was not from the water heater," and that he can eliminate "the water heater as a source of gas for the explosion." ECF No. 43-1 at 8, ¶ 5.

Thus, the evidence in the record indicates that the relevant danger was a gas leak in the cabin's propane piping system that caused gas to pool in the basement, thereby creating the risk of an explosion. The question then becomes whether there was material evidence that the Sliemerses knew or should have known of this gas leak, thus creating a triable issue of fact.

### B. Constructive Knowledge of the Propane Gas Leak.

Mr. Giblin's theory is that the Sliemerses' knowledge can be inferred from their failure to obtain a plumbing permit when installing the water heater in 2009 (some three years before the accident). A landowner's violation of an ordinance can establish constructive knowledge under certain circumstances. *Lombard,* 187 P.3d at 571. In *Lombard,* a teacher and school district sued a conference facility when the teacher fell off a ladder while descending from a lofted reading area at the facility. *Id.* at 568. The ladder connected the loft to the lower level. *Id.* The ladder violated a provision of Teller County's building code that required lofted areas to be accessed only by staircases. *Id.* at 568–69.

The *Lombard* court held that evidence of a violation of an ordinance "is not dispositive of the landowner's knowledge of a danger." *Id.* at 572. Rather, in order to survive summary judgment on that issue, an invitee must offer additional evidence that the code "contains a

provision that was intended to protect against the *particular* danger allegedly suffered, that the landowner knew or should have known of the provision, and that the landowner knew or should have known of the condition that violated the code's provision." *Id*. (emphasis added).  The court found that the plaintiffs provided sufficient evidence that the allegedly violated code provisions "were intended to protect the health and safety of the public." *Id.* at 573.

It is undisputed that Mr. Sliemers neither obtained a permit nor received an inspection of the water heater installation.  *See* Sliemers Depo. ECF No. 43-3 at 89:11–13.  Mr. Giblin contends that the Jefferson County permitting requirement, like the Teller County provision in *Lombard*, has an overarching goal of protecting public safety.  He suggests that it "is generally accepted in the construction industry that failure to obtain building permits and necessary inspections is potentially hazardous to occupants and that the inspections are to see that installations are properly accomplished and that they are safe for occupancy." ECF No. 43 at ¶ 14.  Furthermore, he claims, "a permit and inspection is required by Jefferson County for the safety of a building occupant . . . in order to prevent fire, explosion or other hazard as was present here." *Id*.  He adds that the permit requirement, "particularly for life safety issues such as a water heater, is intended to protect against the malfunction of same or for that element to become a hazard." *Id.* at 12.

I readily accept the premise that one of the general goals of the Jefferson County permitting and inspection process is to protect the safety of building occupants.  However, in *Lombard,* the plaintiffs identified specific provisions of the county building code that narrowly focused on the means by which an individual would travel between a loft and a lower level, requiring "that access between a ground floor and a loft must be by way of a staircase with

certain dimensions." 187 P.3d at 572.  Here, however, Mr. Giblin does not argue that the Sliemerses violated a distinct provision of the Jefferson County building or plumbing code. Rather he relies on their failure to obtain a permit for the water heater installation.  Mr. Giblin provides the form that a homeowner uses to obtain a permit for and inspection of any plumbing work done during new construction, remodel, repair, or additions.  ECF No. 43-2 at 7.  The form requires an applicant to sign an affidavit, demonstrating that the homeowner "can and will perform the work in accordance with the latest edition of the Jefferson County Plumbing Code and all other applicable codes" and understands that "all work under this permit must be inspected." *Id.* at 8.  The form prompts an applicant to select the particular type of plumbing work to be performed, and the installation of a "Water Heater/Vent" and "Gas Piping/Liquid Propane" are listed as two of the 13 different categories.  ECF No. 43-2 at 8.

Mr. Giblin's theory is that the Sliemerses' failure to obtain a permit satisfies the *Lombard* test for constructive knowledge because the permit requirement assures that an inspector would evaluate the safety of any permitted plumbing work.  But despite the broad phrasing of its finding that the staircase requirement was intended "to protect the health and safety of the public," it is implicit in the *Lombard* decision that there was a close connection between the ordinance's focus and the danger that caused the injury.  I do not read the *Lombard* decision to mean that the builder could be found to have constructive knowledge of *any* danger associated with the failure to install a staircase.  For example, had the ladder caught fire and burned the teacher, the *Lombard* court would almost certainly not have imputed knowledge to the builder of that danger because Teller County enacted the staircase requirement to mitigate the hazard of falling and not to reduce the risk of fire.

10

The problem here is that Mr. Giblin cannot identify particular sections of the plumbing code that govern the possibility of propane gas leaks. At best, the Sliemerses' failure to obtain a permit could arguably have put them on notice of *some* danger related to their un-permitted installation of the water heater. However, the intent of the permit requirement is too general and its connection to a propane gas leak too remote to reasonably impute knowledge to the Sliemerses. Put another way, the fact that a plumbing permit was not obtained when Mr. Sliemers installed the water heater does not support the inference that he knew or should have known of a leak in the propane pipe three years later.

In contrast, Mr. Giblin does offer evidence of how the Sliemerses could be found to be on notice of a carbon monoxide leak. In addition to Mr. Freeman's report, Mr. Giblin relies on the findings of Jim Lydon, a general contractor whom he hired to investigate the explosion. *See* ECF No. 43-1; ECF No. 43-2. Both Mr. Freeman and Mr. Lydon express concerns over how Mr. Sliemers vented the water heater and attest that an inspector would have found him in violation of a specific code provision that addresses the venting of carbon monoxide. Mr. Lydon states that the venting was "grossly in violation of building code for the venting of carbon monoxide." ECF No. 43-2 at 3. Like in *Lombard*, there is a clear connection between the focus of the provision—the venting of a water heater—and the obvious risk of carbon monoxide poisoning. Had Mr. Giblin suffered from carbon monoxide poisoning instead of a propane explosion, that code violation could be assumed to have put the Sliemerses on notice of the danger of a carbon monoxide leak. However, without similar evidence of a specific provision's intent to guard against a propane gas leak, Mr. Giblin fails to establish that the Sliemerses should have known of that danger.

In sum, the fact that Mr. Sliemers did not obtain a plumbing permit, while on the surface a bad fact for the defendants, is ultimately not dispositive. It establishes nothing about the Sliemerses' knowledge, actual or constructive, of a leak in a pipe some three years later. Therefore, while I have sympathy for Mr. Giblin's injuries, I conclude that he has not met his burden of coming forward with specific evidence that, if believed, could permit a jury to conclude that the Sliemerses had constructive knowledge of the danger of a propane gas leak. As such, the Court does not reach the remaining elements of the claim.

### C. **Destruction of Evidence.**

Mr. Giblin explains that he cannot offer additional evidence that the Sliemerses had or should have had knowledge of the danger of a propone leak because the Sliemerses "destroyed" the bulk of the physical evidence a few days after the explosion. ECF No. 43 at ¶ 15. He urges the Court not to reward them for spoliation of evidence. *Id.* at 15–16.

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Blangsted v. Snowmass-Wildcat Fire Prot. Dist.,* 642 F.Supp.2d 1250, 1259–60 (D. Colo. 2009) (internal quotation and citation omitted). A court has both inherent power as well as authority under Fed.R.Civ.P. 37(b)(2) to sanction a litigant for the destruction or loss of evidence. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 –45 (1991); *Smith v. Nw. Fin. Acceptance, Inc.,* 129 F.3d 1408 (10th Cir. 1997). A court can sanction a party for spoliation when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007). When considering whether the

spoliation was prejudicial, a court must first determine whether the evidence "would be relevant to an issue at trial." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 621 (D.Colo.2007).

Mr. Giblin argues that preservation of the pipes, fittings, and water heater could have provided his investigators with more information. Mr. Freeman states that if "Mr. Sliemers had preserved the water heater and gas piping in their original condition, the cause of the explosion most likely could have been determined." ECF No. 43-1 at ¶ 5. Mr. Freeman also alleges that he cannot determine whether a building inspector would "have seen something that somehow was related to the explosion" because "we don't know exactly where in the piping the gas leaked from." Freeman Depo. ECF No. 43-13 at 32:21–33:1. He speculates that "if it was something that was visibly obvious that was a problem with the installation [of the water heater], maybe the building inspector would have caught [it] if they had gotten a permit." *Id.* at 33:2–5. Finally, Mr. Giblin claims that the destruction of "the key evidence" is "further proof of the significant factual dispute as to whether [the Sliemerses] knew or should have known of the hazard that they had created on their property." ECF No. 43 at 18.

The available remedies for spoliation depend "on the culpability of the responsible party." *Estate of Trentadue v. United States,* 397 F.3d 840, 862 (10th Cir. 2005). Evidence of intentional destruction or bad faith can justify an adverse inference instruction where the jury can infer that the destroyed materials would have been unfavorable to the responsible party's case. *Turner v. Public Service Co. of Colorado,* 563 F.3d 1136, 1149 (10th Cir. 2009). However, negligence in destroying or losing materials does "not support an inference of consciousness of a weak case." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir.1997). Absent a showing

of bad faith, a court may impose lesser sanctions. *Henning v. Union Pacific R. Co.,* 530 F.3d 1206, 1220 (10th Cir. 2008).

Mr. Giblin speculates that the "destruction of these premises can only be seen as being done in bad faith." ECF No. 43 at 15. In the alternative, he urges the court to find that the Sliemerses were negligent and to "fashion appropriate remedies." *Id.* at 17. But the Sliemerses' degree of culpability does not matter. Mr. Giblin does not establish how the disposal of these materials prejudiced his case. He has not come forward with evidence to establish how that evidence would be relevant to whether the Sliemerses knew or should have known of the leak. The preservation of the water heater and gas piping might have solved some of the mysteries surrounding the explosion, including perhaps where the propane leak occurred in the system. Additionally, the materials might have assisted Mr. Freeman and Mr. Lydon in solidifying their determinations of what caused the leak. However, the issue here is not causation, as it might be in a common law negligence claim, but whether the discarded materials could assist a jury in determining whether the Sliemerses should have been on notice of the leak.

## ORDER

For the reasons described above, The Court finds that the Sliemerses are entitled to judgment as a matter of law. Defendants' motion for summary judgment [ECF No. 40] is GRANTED. The defendants' motion to exclude expert testimony [ECF No. 44] is DENIED as moot. Final judgment will enter in favor of the defendants, Mr. John Sliemers and Mrs. Patricia Sliemers, and against the plaintiff, Mr. Matthew Giblin. As the prevailing party, the defendants are awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 24th day of November, 2015.

15

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge